case, which is United States v. Longust. Mr. Schultz. May it please the Court, Counsel for the Government, Todd Schultz, Assistant Federal Public Defender, representing the Defendant Appellant. The District Court in this case committed procedural error by failing to address, in its sentencing analysis, one of the primary arguments made at sentencing in mitigation. I attempted at the sentencing hearing to advance two primary arguments in mitigation which pertain to the nature and circumstances of the offense and the seriousness of the offense. The first of those pertain to the fact that the Defendant, in the scheme of the overall loss to the Scott Credit Union, benefited financially only minimally. I believe the criminal loss attributed to his fraudulent loans, which spanned a number of years, was approximately $13.7 million and that he benefited to the tune of about $200,000. This argument, this first argument, was addressed by the Court in its sentencing analysis and is not the issue before this Court. It is the second primary argument which I attempted to advance, which we are arguing the District Court erred by failing to consider. And that was the Defendant's motivation for these fraudulent loans, where those loans ultimately wound up, and whether those individuals who were the recipients of the fraudulent loans were aware of some of those loans. So what we argued to the Court was that with respect to many of these loans, there were a small group of individuals who were the recipients of those loans, and that certainly with respect in particular to Counts 4 and 5, to which he pled, that the proceeds of those loans, those loan advances, were funneled into a company known as Windor. And we also argued to the Court that the individuals mentioned by name in the indictment as to Counts 4 and 5, we argued that those individuals likely had knowledge of those loans. Why is that a mitigating factor here? As to why knowledge on the part of those individuals would be mitigating, Your Honor? It would seem to suggest that the Defendant was in cahoots with the folks who were benefiting from his fraud. I'm not sure why that's, I'm not getting this. Well, Your Honor, and I know that the government in its response indicated that in fact it thought it was aggravating. It was my position, Your Honor, the government had submitted for the Court's consideration a victim impact letter with respect to the Defendant named in Count 4, and my concern in part was that the Court might understandably find it to be an aggravating factor that this person had been victimized by my client, and the... I thought the victim was the credit union here, right? To the lost $25 million, right? Yes, but according to the victim impact letter submitted by this individual, he had suffered a number of consequences as a result of these fraudulent loans, and we believed that it was mitigating, Your Honor, that he was not taking advantage of these individuals, but rather that they had an understanding. And I respect the fact that you could say, well, that may be so, but that only highlights, as the Court is indicating, something that might be aggravating. We took a different view on that matter, Your Honor, because it was our argument that all these individuals, certainly the individuals with respect to Counts 4 and 5, that there was an understanding that they were going to keep afloat this company, Windor, that they had an interest in at some point purchasing that company, and we believed that the fact that those individuals had knowledge and these loans were flowing to prop up a company which these individuals had at least, in the memorandum of understanding, professed an interest... Well, is this a Robin Hood argument? Your Honor, I'm glad that you mentioned that. It's kind of a white-collar Robin Hood argument, so we believe that it matters. I think that's a loser. Well, Your Honor, I respect that fact, and it may be that the District Court thought it was a loser, too, but we still believe, based on the law in this circuit, that the District Court had an obligation. You think the law in this circuit is getting down to that point where you can raise minute little things like this that you say the judge didn't consider it? Your Honor, I guess where I disagree with the Court is I don't think that this is a minute issue. I mean, this is the nature and circumstances of this offense, is how this offense was committed. We know how much money he gained, right? Yes, sir. So where do we go from there? Your Honor, that argument was addressed by the Court, and the Court did not find that to be mitigating in the context of the overall loss. We thought, however, though, that this argument was not minimal, that the nature and circumstances of the offense mattered. As Judge Posner indicated, although it may ultimately be deemed a loser, we think it matters in some context why the offense was committed. This is just another example. I mean, it's not your fault. This is the way things seem to be pushing constantly, is that you want this Court to second-guess every sentence that comes down by a district judge, not you. Right. And I guess I don't view it that way. All I'm suggesting to the Court is that this Court was certainly free to reject the argument and may have felt, just as Judge Posner did. But that requires the judge then to list item by item by item by item, and if he misses one, then you bring that up. Right. And so the argument that I'm making to the Court this morning is that that argument in mitigation was both a principal argument and was not so weak as to not merit some kind of acknowledgement by the Court. As Judge Hamilton has pointed out, it may, in fact, unbeknownst to me, be an aggravating factor, and that would certainly suggest that it's no minimal matter but, in fact, is relevant. And so we believe the Court certainly was free to reject that argument but needed to address in its sentencing analysis why it rejected it, that it wasn't an argument that was so weak as to not merit any discussion. You had a discussion with the judge about this, and she didn't understand any more than I do why this is an argument in mitigation. At least that's my take on the transcript, but I'd welcome your comment on that. Your Honor, I guess I'm sorry to hear that you understand it as well as the district court judge, but there certainly was a discussion about it. It is my reading of that transcript that the judge indicated that she didn't understand the argument. We had been wondering for some ten minutes, perhaps, as you may be wondering what the purpose of the argument is, and ultimately said, though, that it would not consider the argument, that it was not relevant. And we, again, believe that that was procedural error, that she would not consider the argument. And I think the fact, Your Honor, that she doesn't address that in her sentencing analysis suggests that she did not consider it. And so all we're saying is, again, not that the Court would have to agree with us on that argument. It appears it likely wouldn't, but nonetheless had an obligation to objecting that argument. So for all those reasons, we're requesting that this Court would reverse the amendment. Okay. Thank you, Mr. Schultz. Mr. Smith? May it please the Court. In the sentencing of Theodore Longest, what was relevant to the district court is what Theodore Longest did, what he knew, or believed. Not what someone else did, knew, or believed. So the district court was proper in rejecting the argument as just totally irrelevant. To narrow the focus, the memorandum of understanding, as counsel conceded, had no legal effect. It never went into effect. Had it gone into effect, it only would have pertained to counts 4 and 5. And to narrow the focus, the total loss for counts 4 and 5, approximately $2.9 million of the $13.8 million criminal loss, the $25.8 million total loss. So it was a limited utility. Had that memorandum of understanding went into effect, which it didn't, it required Mr. Butts and Mr. Schultz to only contribute $125,000 apiece. Each of those loans by Mr. Longest solely went up to just in excess of $1.4 million. So the total loss from counts 4 and 5 are $2.9. So it was an irrelevant argument. Had minimal impact on the overall loss. And this is an individual that got the low end of an advisory guideline sentence, of which before the court there was no argument that that low end guideline sentence was unreasonable at all. I don't usually ask this, but do you think you guys got to the bottom of this? I can tell you that we tracked. Because the amount of money that actually, not all the money did flow into WINDOR, as he suggested. The amount of money that did flow into WINDOR, I actually went with the agents and we tracked. And it seemed like a ridiculous, unreasonable amount of money in a short period of time to be expensed out, at least according to the checks that went out in the receipts, it went for WINDOR type of business operations. It did. So whether there were checks for an intended purpose that went to a third party, we did not find that. Okay. But other than that, I'll be glad to answer any questions. Okay. Thank you, Mr. Smith. Mr. Schultz, do you want another minute? No, I don't want to say anything more. Okay. Well, thank you very much to both counselors.